Circuit Court, District of Columbia. April Term, 1822.

SLAVERY—EXECUTORY CONTRACT BETWEEN MASTER AND SLAVE.

No executory contract between a master and his slave can be enforced, either at law or in equity.

[Followed in Fanny v. Kell, Case No. 4,639; Richard v. Van Meter, Id. 11,763.]

The petition of negro Joseph Brown, stated, that before the year 1818, he then being the slave of Abraham Wingard, the defendant's [Mary Wingard's] testator, entered into an agreement with the said Abraham, at his, the said Abraham's request, for the purchase of his freedom, at and for the sum of nine hundred dollars, to be paid by the petitioner. That the said Abraham immediately suffered the petitioner to go at large and labor for his own use; and in the course of that year he paid the said Abraham $300, and in the next year, $550, expressly as the purchase-money of the petitioner's freedom, leaving a balance of fifty dollars due, as appears by the receipt

[1] [Reported by Hon. William Cranch, Chief Judge.]

of the said Abraham, in his handwriting, and signed by him, in these words: "1819. Received from Joseph Brown five hundred and fifty dollars in part payment of his freedom. Abraham Wingard. Due me now, from Joseph Brown, fifty dollars, which, when paid, will be in full. A. W." The petition further stated, that he could prove, by the most respectable testimony, that the said A. Wingard, in his lifetime, after the year 1818, always spoke of him as entitled to his freedom, upon payment of the said fifty dollars; and that he had solemnly contracted with the petitioner for his freedom. It states, further, that he brings into court the fifty dollars, ready to be paid to the defendant, the executrix of the said Abraham's will, but she refuses to manumit him; he therefore prays the court to decree that she should, by a good deed, manumit him, and set him free.

The jury, in a special verdict, found the facts to be nearly as stated in the petition; and further, that in 1816 and 1817, about the time the agreement was made, the said Abraham Wingard was largely indebted, but believed not to be insolvent; that in 1818 and 1819 property in Georgetown fell, and there was more doubt of his solvency. That he died about January, 1820, and his estate has been found to be largely insolvent. That the defendant holds the petitioner, as executrix, to be accounted for according to law. That the petitioner is under forty-five years of age, and able to gain a livelihood by labor; whereupon the jury say, that if, upon the facts above stated and found, the court should be of opinion that the petitioner has any claim, in law or equity, to his freedom, then they find for the petitioner, and if otherwise, then for the defendant.

Mr. Key and Mr. Jones, for petitioner.

Equity will not regard the want of an intervening trustee between the master and slave. As in a case of a contract directly between husband and wife, equity will enforce the contract. So, it will not regard the want of a legal deed of manumission. It considers that done which ought to be done. There being a valuable consideration, equity will consider the master himself as a trustee for the benefit of the slave. There is no law to prevent a verbal manumission. In England a villein may be enfranchised by implication. The act of Maryland, 1752, c. 1, which prohibited manumission by verbal order, was repealed by the act of 1796, c. 67. Such manumission was lawful before the act of 1752, or it would not have been necessary to pass that act to prohibit it. The opinion of Mr. Dulany, in 1 Har. & McH. 563, that slaves "could have no legal remedy against their master for any matter anterior to their manumission," is not law now. The act of 1796 does not forbid such a manumission. The only restraints in that act are, the age and capacity of the slave, and the interfering rights of creditors. This was not a contract in fraud of creditors. The case of Ketletas v. Fleet, 7 Johns. 328, 375, shows that the court will enforce an executory contract with a slave; and the case of Sally v. Beaty, from South Carolina, in 1 Bay, 260, shows that a slave may acquire property. Here the contract is carried into effect. The slave has been actually set free, and the consideration money has been paid.

Augustus Taney, contra.

There is no case under the Maryland law in which a verbal order has been deemed a manumission, either in law or equity. A villein, in England, could not be enfranchised without deed, or matter of record. A suit by the lord, against his villein, was a record-acknowledgment of his freedom. The laws of slavery, in New York, differ from the laws of Maryland. The New York cases, therefore, do not apply. Besides, there is a difference between a contract and a benevolence. This is a mere benevolence. There was no consideration; for all that the slave could earn belonged to the master. A mere benevolence must be completely executed. It cannot be enforced as a contract. The statute requiring certain solemnities, as necessary to the validity of manumission, is virtually negative of all other modes of manumission. General policy requires such a restriction. If Abraham Wingard himself were now present, and a party to this suit, and were insolvent, the contract could not be carried into effect to the prejudice of creditors. Their rights intervene before the contract is executed, and must prevail. To every contract there must be two parties competent to contract. The petitioner is still a slave, and, in law, incapable of contracting.

THE COURT, having taken time to consider, ordered judgment to be entered up for the defendant.